UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BETHANY STEPHENS                                                CIVIL ACTION

VERSUS                                                          NO. 24-579-JWD-RLB

COMMISSIONER OF SOCIAL SECURITY

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on July 29, 2025.

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　RICHARD L. BOURGEOIS, JR.
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BETHANY STEPHENS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-579-JWD-RLB** |
| **COMMISSIONER OF SOCIAL SECURITY** | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Bethany Stephens ("Plaintiff") seeks review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g). (R. Doc. 1). Having found all the procedural prerequisites met, this Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); *see also* 20 C.F.R. § 404.981. For the reasons given below, the Court recommends that the Commissioner's decision be **VACATED** and that Plaintiff's appeal be **REMANDED** for further proceedings consistent with this Order.

### I. PROCEDURAL HISTORY

On November 5, 2021, Plaintiff filed an application for Title XVI Supplemental Security Income Benefits, alleging disability beginning December 1, 2020, due to post-traumatic stress disorder, depression, neck, back, and shoulder problems. (Tr. 60; 68). Plaintiff's claim was denied on February 23, 2022, and was again denied upon reconsideration on November 16, 2022. (Tr. 59; 68). After a hearing was held on November 28, 2023 (T 29-58), the Administrative Law Judge (the "ALJ") denied Plaintiff's claim on February 1, 2024. (Tr. 11-23). The ALJ held that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, and carpal tunnel syndrome. (Tr. 16). He also held Plaintiff had certain non-severe impairments, namely uncontrolled Type I Diabetes Mellitus ("TIDM"), obesity, non-alcoholic fatty liver, insomnia, and major depressive disorder. (Tr. 17). The ALJ concluded that Plaintiff was not disabled because she had the residual functional capacity ("RFC") to perform her past job as a waitress and to perform

work as a housekeeper, dry cleaner, and mailroom sorter. (Tr. 21-23). The Appeals Council denied Plaintiff's request for review on June 3, 2024. (Tr. 1-3). Plaintiff filed her Complaint on July 18, 2024 (R. Doc. 1).

## II.     STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the ALJ and (2) whether the correct legal standards were applied. *See Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *see also Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence is defined as less than a preponderance but "more than a mere scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa,* 895 F.2d at 1022. The Fifth Circuit has held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations and citations omitted). The Court may not reweigh evidence, try issues *de novo,* or substitute its judgment for that of the Commissioner. *See Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

3

### III.  THE ALJ'S DETERMINATION

To qualify for benefits, a claimant must establish that he or she is disabled within the meaning of the Social Security Act (the "SSA"). *See Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir. 1986). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders,* 914 F.2d at 618.

The Commissioner (through an ALJ) applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he is not currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). Second, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he proves his impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); *see also* 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. *See* 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps, then the burden shifts to the ALJ to prove, considering the claimant's RFC, age, education, and past work experience, that he is capable of performing other work. *See* 20 C.F.R § 404.1520(g)(1). If the ALJ proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *See Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

4

Here, the ALJ made the following determinations:

1. The claimant has not engaged in substantial gainful activity since November 5, 2021, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease, and carpal tunnel syndrome (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except frequent climbing of ramps and stairs, occasional climbing of ladders, ropes or scaffolds, unlimited balancing, frequent stooping, unlimited kneeling or crouching or frequent crawling. The claimant can perform frequent reaching with the left, non-dominant upper extremity, and frequent handling or fingering bilaterally.

5. The claimant is capable of performing past relevant work as a waitress. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since November 5, 2021, the date the application was filed (20 CFR 416.920(f)).

## IV.  ANALYSIS

Plaintiff argues that the ALJ (i) erred in failing to find Plaintiff's TIDM (and accompanying peripheral neuropathy) to be a severe impairment, and (ii) did not support Plaintiff's RFC with substantial evidence because Plaintiff's RFC did not reflect limitations caused by all of Plaintiff's impairments.

In support of her first argument, Plaintiff asserts that her TIDM has more than a minimal or slight impact on her ability to work, considering that (i) her TIDM is uncontrolled, requiring the use of an insulin pump many times a day, (ii) she was admitted to the ICU twice for Diabetic Ketoacidosis ("DKA") and glucose readings over 500 and 900 due to a malfunctioning insulin pump, (iii) her TIDM was poorly controlled even with the insulin pump, (iv) she has neuropathy, severely outside of a normal range, noted as being likely caused by her TIDM, and (v) her nurse

5

practitioner Liz Hattaway ("Hattaway") noted in a letter that "Plaintiff's diabetic episodes caused confusion, weakness, unsteadiness, and increased risk of falling or having altered mental status." (R. Doc. 14). Plaintiff also argues the ALJ failed to apply the correct severity legal standard and failed to explain with any specificity why Plaintiff's TIDM was found to be non-severe.

In support of her second argument, Plaintiff asserts that (i) her TIDM and resulting neuropathy were not considered in the ALJ's RFC analysis, (ii) the ALJ based her RFC on medical and physical consultants' opinions that were rendered well before Plaintiff's record was complete, (iii) the ALJ did not consider Hattaway's letter in his RFC analysis, and (iv) the ALJ failed to explain why the RFC includes no limitations due to Plaintiff's TIDM or neuropathy. Plaintiff argues that the above errors were not harmless because "the ALJ failed to incorporate any limitations into the RFC to account for these impairments[ so that t]the ALJ relied upon vocational expert ("VE") testimony that did not include limitations that properly account for these impairments[.]" (R. Doc. 14). Thus, Plaintiff argues, both the RFC and the ALJ's ultimate denial of benefits are not based on substantial evidence.

In response to the above, the Commissioner argues that the correct legal standards were applied and that substantial evidence supports the ALJ's finding that Plaintiff's TIDM does not qualify as a severe impairment because (i) the ALJ provided a "thorough discussion" of all of Plaintiff's impairments in his severity analysis and all of the evidence he used to support his RFC analysis, (ii) Plaintiff did not establish that her non-severe impairments resulted in any functional limitations, so they did not need to be considered for Plaintiff's RFC, (iii) Plaintiff has normal orientation, memory, attention span, and concentration, (iv) Plaintiff has tingling due to her neuropathy but no weakness, numbness, or dizziness, (v) contrary to Plaintiff's assertion, the ALJ did consider and make a note regarding part of Hattaway's letter in his RFC analysis, but he did not need to reference the portions addressing confusion and weakness as these "appear[ed] to be based

on Plaintiff's own subjective complaints rather than objective medical evidence[,]" and (vi) Plaintiff's daily activities, cited by the ALJ, suggest Plaintiff's alleged symptoms are not as severe as they were alleged to be, refuting her claim that her TIDM has more than a minimal impact on her ability to work. (R. Doc. 15).

Plaintiff responded by reiterating her previous arguments and noting the Commissioner provided no specific evidence that certain portions of Hattaway's letter were solely the result of Plaintiff's subjective complaints. (R. Doc. 16).

The extent of the ALJ's discussion of Plaintiff's TIDM in his severity analysis follows:

> The claimant was diagnosed with [TIDM], uncontrolled (Exhibit 15F/4). She sought emergency treatment two weeks prior to the hearing for a high A1c level. The claimant was assessed with unspecified diabetes mellitus with ketoacidosis and without coma (Exhibit 16F/18). She testified that she monitored her blood sugar levels at home and used an insulin pump. When her sugar was low, the claimant drank orange juice or ate peanut butter (Hearing Testimony).
> . . .
> The claimant's impairments would have no more than a minimal effect on the claimant's ability to work. Thus, these impairments are non-severe (SSR 85-28). The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functioning capacity.

(Tr. 17). Plaintiff argues that this is not sufficient. The Court agrees.

At step two of the evaluation process, the ALJ "must consider the medical severity of [the claimant's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii),(c). The ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010). A severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to

7

interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101, 1104-05 (5th Cir. 1985). To meet the severity threshold, "the claimant need only . . . make a *de minimis* showing that [the] impairment is severe enough to interfere with her ability to do work." *Anthony*, 954 F.2d at 294 n.5 (citation omitted). Ultimately, a severity determination may not be "made without regard to the individual's ability to perform substantial gainful activity." *Stone*, 752 F.2d at 1104.

An ALJ is presumed to have applied the incorrect standard "unless the correct standard is set forth by reference to [*Stone*] or another of the same effect[.]" *Stone*, 752 F.2d at 1105. Here, when identifying Plaintiff's impairments, the ALJ did not mention or cite the severe impairment standard set forth in *Stone*. (Tr. 17). Yet, he did cite SSR 85-28, which states:

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

*Titles II & Xvi: Med. Impairments That Are Not Severe,* SSR 85-28 (S.S.A. 1985). "Recently, in *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021), the Fifth Circuit expressly held that SSR 85-28 is consistent with and comports with the *Stone* standard despite the different wording[.]" *Martinez v. Kijakazi,* No. 3:20-CV-3282-BH, 2022 WL 4590577, at *11-12 (N.D. Tex. Sept. 29, 2022). To the extent that Plaintiff claims that the ALJ erred simply because he recited a severity standard that differed from *Stone*, remand is not required on this basis. *See Jeansonne v. Saul*, 855 F. App'x 193, 196 (5th Cir. 2021) (citing *Keel* and stating that "SSR 85-28 comports with Fifth Circuit case law and is an acceptable reference for the proper standard for step two"). The real question is whether the ALJ actually applied the SSR 85-28 standard. *Hebert v. Comm'r of Soc. Sec.,* No. CV 22-226-SDD-EWD, 2023 WL 6319333, at *6 (M.D. La. Aug. 10, 2023), *report and recommendation*

8

*adopted,* No. CV 22-226-SDD-EWD, 2023 WL 6303019 (M.D. La. Sept. 27, 2023) (emphasis added) (although "ALJ's reference to SSR 85-28, as opposed to *Stone*, d[id] not alone result in error[, it was] subject to reversal and remand . . . because it [wa]s not clear that he *applied* the appropriate legal standard in his step 2 findings").

After noting the presence of several medically determinable impairments, the ALJ in this case simply writes, "The claimant's impairments would have no more than a minimal effect on the claimant's ability to work. Thus, these impairments are non-severe (SSR 85-28)." (Tr. 17).

No analysis or reasoning is provided, and the ALJ fails to mention any of Hattaway's letter or Plaintiff's neuropathy in the severity section. *Id.* This Court therefore finds the ALJ did not actually *apply* the correct legal standard in his severity findings. *See Neal v. Comm'r of Soc. Sec. Admin.,* No. 3:09–CV–522–N, 2009 WL 3856662, at *1 (N.D. Tex. Nov. 16, 2009) (Godbey, J.) ("Even though citation to *Stone* may be an indication that the ALJ applied the correct standard of severity, nowhere does *Stone* state that the ALJ's citation to *Stone,* without more, conclusively demonstrates that he applied the correct standard.").

The Commissioner correctly notes that "[n]on-severe impairments which result in no functional limitations [need not] be included in the RFC." *Herrera v. Berryhill*, No. EP-16-CV-00176-ATB, 2017 WL 979077, at *3 (W.D. Tex. Mar. 13, 2017). However, this concept does not apply here because Plaintiff's TIDM is severe and at least two medical professionals noted functional limitations that were occurring as a result of Plaintiff's TIDM. *Compare Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims,* SSR 96-8P (S.S.A. July 2, 1996) ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."). On December 19, 2023, Hattaway noted Plaintiff was suffering from

9

"frequent hyperglycemic and hypoglycemic episodes which cause confusion, weakness, unsteadiness, and increased risk of falling or having altered mental status." (Tr. 1404). On June 1, 2021, Physician Jeffrey Traina noted that, "upon waking or following prolonged sitting in a position with arm leaning against hard object[,]" Plaintiff had "[r]adial neuropathy symptoms include wrist drop (almost always unilateral) with the patient being unable to extend wrist or fingers [and with] occasional forearm/hand/thumb numbness." (Tr. 1214).

Plaintiff has made the necessary *de minimis* showing of severity. *Anthony*, 954 F.2d at 294 n.5; *see also Morris v. Astrue,* No. 4:11-CV-631-Y, 2012 WL 4466144, at *1 (N.D. Tex. Sept. 27, 2012) (emphasis in original) ("An impairment causing *any* interference with work ability, even minimal interference, is a severe impairment under *Stone*."); *see also Scroggins v. Astrue,* 598 F.Supp.2d 800, 805 (N.D.Tex.2009) (*"Stone* provides no allowance for a minimal interference on a claimant's ability to work."); *see also Robinson v. Sullivan*, No. 88-4486, 1990 WL 180691, at *1 (E.D. La. July 19, 1990) (diabetes severe where diabetic condition could be controlled but was not, due to pain, and caused frequent urination at night, weight loss that came back, blurred vision for 1-2 hours each morning, arms, shoulders, and legs loss of strength, numb toes, loss of strength so claimant could only walk 2-3 blocks before tiring, and sharp shooting pains in his legs with a need to elevate them). Had the ALJ *applied* the correct standard, this Court agrees with Plaintiff that her TIDM would have been noted as severe because it was causing symptoms that went beyond slight abnormalities and would impact Plaintiff's ability to work.

Plaintiff further argues that the ALJ did not adequately consider Hattaway's letter in his RFC analysis, and failed to explain why the RFC includes no TIDM limitations. Plaintiff argues these errors were not harmless because the faulty RFC led to the VE offering testimony that did not include limitations that properly account for Plaintiff's impairments. The Court agrees and finds the ALJ's discussion of Hattaway's letter did not comport with the requirements of 20 C.F.R. §

10

404.1520c. The ALJ's discussion of Hattaway's letter is limited to a single paragraph in the decision: "In a statement, Ms. Hattaway stated that the claimant's multiple medications for her various medical conditions contributed to her difficulty in working (Exhibit 17F)." (Tr. 20). This is an inadequate summary of Ms. Hattaway's letter, which stated the following:

> Bethany Stephens (06/28/1980) is a current patient of mine, and she has applied for disability. She has multiple medical conditions that are contributing to her disability - Type 1 diabetes, use of continuous glucose monitor and insulin pump, diabetic peripheral neuropathy, chronic neck and back pain, non-alcoholic fatty liver, hyperlipidemia, hypertension, anxiety, and depression. She takes multiple medications for these medical conditions which contribute to her difficulty in working. Her Type 1 diabetes is not well controlled, requiring multiple doses of insulin per day. She has frequent hyperglycemic and hypoglycemic episodes which cause confusion, weakness, unsteadiness, and increased risk of falling or having altered mental status. She sees a provider at an endocrinology clinic for her diabetes care. Bethany has chronic cervical and lumbar radiculopathy, as well as shoulder pain, and is under care of orthopedist and pain management.

(Tr. 1404). The ALJ failed to address any of the statements made about the potential functional limitations Plaintiff may be subject to during her diabetic episodes: "confusion, weakness, unsteadiness, and increased risk of falling or having altered mental status." (Tr. 1404).

"[T]here [must] be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding." *Bjorklund v. Kijakazi,* No. 4:21-CV-01810, 2022 WL 2392315, at *3 (S.D. Tex. July 1, 2022), *report and recommendation adopted sub nom. Bjorklund v. Saul,* No. 4:21-CV-01810, 2022 WL 2905471 (S.D. Tex. July 22, 2022) (citation omitted); *see Reeves v. Kijakazi,* No. CV 3:21-01097, 2022 WL 4113675, at *11 (W.D. La. Aug. 24, 2022), *report and recommendation adopted,* No. 3:21-CV-01097, 2022 WL 4110916 (W.D. La. Sept. 8, 2022) (citation omitted) (ALJ under no obligation to mirror an opinion, but does need to "meaningfully explain why certain limitations are not included in the RFC determination, especially when such limitations are set forth in opinions the ALJ weighs favorably"). "A generic statement or summary that a medical provider's opinion is inconsistent with the record as a whole does not suffice, because the Court cannot

undertake a meaningful review of the ALJ's consideration of the medical opinions." *Bjorklund,* 2022 WL 2392315, at *3 (citations and quotations omitted).

The ALJ here has not provided *any* statement or analysis regarding the persuasiveness of Hattaway's opinion. Accordingly, the ALJ failed to meet the explanation requirements of 20 C.F.R. § 404.1520c. *See Id.,* at *4 ("[D]istrict courts within the Fifth Circuit thus far have concluded that spare, conclusory explanations cannot satisfy Section 404.1520c—even if the ALJ's ultimate finding is potentially supportable by the record."); *see also Moore v. Saul*, 2021 WL 754833, at *3 (S.D. Miss. Feb. 26, 2021) (rejecting a healthcare provider's opinions "by implication" and without explanation was insufficient because "the regulations now require more"). Given the lack of explanation, the Court declines to speculate about the record and build a logic bridge for the ALJ and holds that the ALJ's failure to properly consider Hattaway's opinion was a legal error. *See Pearson v. Comm'r of Soc. Sec.,* No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *6 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted,* No. 120CV00166HSORPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021) ("it is neither the role of the Commissioner nor this Court to supply post hoc rationalizations for the ALJ's conclusions").

Having determined that the ALJ erred, the Court turns to the question of whether the ALJ's error was harmless. *See generally Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (analyzing an ALJ's failure to provide an explanation for a different step-three finding). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006).

The Court notes that the ALJ is not bound to accept the limitations offered by a medical professional, and it is the ALJ's role to resolve any differences in opinions. In the instant case, the ALJ could find the opinions given by Dr. Wilson or Dr. Davis persuasive, notwithstanding their timing. With respect to the opinions of the state agency medical consultants, however, the Plaintiff

is correct that those opinions did not review Plaintiffs' ICU admissions for DKA, Hattaway's letter, or other TIDM medical records, as they were rendered much earlier. Accordingly, those opinions could not address or resolve consideration of TIDM as a severe impairment. Accordingly, the ALJ is bound to explain how or why he found Hattaway's less persuasive and he did not do so.

This error is not harmless as a different conclusion could have been reached had the ALJ properly considered Hattaway's opinions regarding Plaintiff's frequent diabetic episodes. Hattaway opines in her letter that Plaintiff's "frequent hyperglycemic and hypoglycemic episodes cause[d] confusion, weakness, unsteadiness, and increased risk of falling or having altered mental status." (Tr. 1404). If the ALJ were to conclude that this means Plaintiff is frequently confused and weak, it would be reasonable for him to include non-exertional and exertional RFC limitations that were not included in the ALJ's February 1, 2024 decision. A different RFC may have also resulted in a different opinion from the VE. *See Bowling v. Shalala,* 36 F.3d 431, 43536 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, . . . a determination of non-disability based on such a defective question cannot stand."). "Furthermore, by failing to explain why [Hattaway's] limitations were not incorporated into the RFC, the ALJ prevents [this C]ourt from conducting a meaningful review to determine whether the decision is supported by substantial evidence." *Reeves*, 2022 WL 4113675, at *11 (citation omitted). Thus, the error is not harmless, and this Court cannot find the ALJ's conclusion is supported by substantial evidence. On remand, the ALJ should fully assess whether the plaintiff TIDM is a severe impairment, consider Hattaway's letter in light of the record as a whole, and provide reasoning regarding its persuasiveness in determining the appropriate RFC.

**V.      CONCLUSION**

For the foregoing reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **VACATED** and Plaintiff's appeal be **REMANDED** for further proceedings consistent with this Order.

Signed in Baton Rouge, Louisiana, on July 29, 2025.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**